IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
—————————————————————

UNITED STATES OF AMERICA

                                            Case No.  08 CRIM 119  (HB)

        -against-

                                            **PRETRIAL MOTION**

BIENVENIDO POLANCO

                        Defendant.
—————————————————————


    Defendant Bienvenido Polanco presents this pretrial motion, and moves for the

following relief:


    1.    Mr. Polanco moves for an order requiring the government to produce any

and all material that is exculpatory or potentially exculpatory, including material that has

impeachment value, as outlined in *Brady v. Maryland*, 373 U.S. 83 (1963), and its

progeny, including information outlined in the accompanying Memorandum of Law with

respect to the confidential informants used in connection with this case. In the event the

government is unsure as to whether any document(s) contain such information, Mr.

Polanco seeks to have the government produce that material for an *in camera* inspection.

    2.    Mr. Polanco seeks a hearing to determine whether probable cause existed

for issuance and execution of the search warrant used to gain entrance to the printing

shop.

    3.    Mr. Polanco requests that the government be required to produce a bill of

particulars.

4.     Mr. Polanco moves for disclosure of all FED.R.CRIM.P.404(b) evidence the government anticipates using at trial and for a hearing on the admissibility of that evidence.

5.     Mr. Polanco seeks a hearing to determine the admissibility of the evidence seized at the time of arrest, pursuant to FRCP 12(b).

6.     Mr. Polanco also seeks to have the government produce witness statements made of all expert witnesses it intends to call at trial.

7.     Mr. Polanco requests a hearing to determine the admissibility of any statements made by any alleged co-conspirators, indicted and un-indicted.

8.     Mr. Polanco seeks the names of all informants employed by the government in connection with this investigation, as well as any information and files containing information about those informants.

9.     Mr. Polanco requests that the government disclose information concerning the circumstances leading up to and surrounding the seizures made in this case, pursuant to FED.R.CRIM.P. 12(d)(2).

10.     Mr. Polanco seeks an order requiring the government to preserve and to produce all rough notes of the investigating agents, including notes concerning any statements allegedly made by him.

11.     Finally, Mr. Polanco seeks leave to file additional motions as they become necessary prior to his trial.  He will provide the government with notice of those motions has he intends to file as they arise.

12.     Mr. Polanco relies upon and incorporates the accompanying Memorandum of Law.

WHEREFORE, Mr. Polanco respectfully requests that this Motion be

Granted and that he be afforded the relief outlined above.


Dated: New York, New York
       May 16, 2008


\_\_\_\_\_/s/_____
ISMAEL GONZALEZ, ESQ.
Attorney for Defendant
Bienvenido Polanco
ISMAEL GONZALEZ & ASSOCIATES
152 West 36th Street, Suite 202
New York, New York 10018
(212) 465-1500

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA

     -against-

                               Case No. 08-CR-119 (HB)

BIENVENIDO POLANCO

            Defendant.
_____

## MEMORANDUM OF LAW IN SUPPORT OF PRETRIAL MOTION OF DEFENDANT BIENVENIDO POLANCO

Defendant Bienvenido Polanco moves for various discovery essential to his defense and for hearing with respect to any statements he or his alleged co-conspirators allegedly made and recorded conversations. Each of these requests is set forth more fully below.

## STATEMENT OF FACTS

The evidence against Mr. Polanco consists of tapes and confidential informants and his own statements.

### I.  The Government Has an Affirmative Duty to Disclose All Evidence Favorable to Mr. Polanco, Including Exculpatory and Impeachment Evidence.

Due process protections require the government to disclose evidence favorable to Mr..Polanco or unfavorable to the prosecution. See *Brady v. Maryland*, 373 U.S. 83 (1963). Under *Brady*, the prosecution has an affirmative duty to produce requested evidence that is materially favorable to the accused, including both direct evidence and impeachment evidence. *Brady* evidence is not just evidence that supports an acquittal,

*Kyles v. Whitley*, 514 U.S. 419, 434 (1995), but can also encompass evidence with "some values as exculpation and impeachment[.]" *Id.* at 450.  If the exculpatory nature of the evidence is doubtful, the prosecution has a n obligation to produce the file to the court for *in camera Brady* inspection.  See *United States v. Cadet*, 727 F.2d 1453 (9th Cir. 1984). Any doubt regarding whether information is *Brady* material should be resolved in favor of disclosure.  *United States v. Agurs*, 427 U.S. 97, 108 n.4 (1976).

Additionally, the prosecution has a duty to exercise due diligence in ascertaining whether evidence favorable to the defendant exists. *See Kyles*, 514 U.S. at 437-38. The government's duty of candor applies to any information affecting a witness's credibility and any information concerning the guilt or innocence of the accused. *United States v. Bagley*, 473 U.S. 667, 676 (1985); *Giglio v. United States*, 405 U.S. 150 (1972); *Napue v. Illinois*, 360 U.S. 264 (1959). Failure to provide impeachment evidence constitutes a violation of due process. *Napue*, 360 U.S. at 269; *see also Giglio*, 405 U.S. at 154; *United States v. Hill*, 976 F.2d 132, 134-35 (3d Cir. 1992).

Finally, impeachment material reasonably includes all background information on the confidential informants used in this case, including their relationships with law enforcement, their criminal records, payments to them from the government, and agreements between them and the government. *See, e.g., United States v. Beckett*, 889 F. Supp. 152,155-56 (D. Del. 1995) (citations omitted). This information assumes heightened importance in a case such as this, whose foundation relies heavily upon the use of confidential informants.  Mr. Polanco therefore specifically requests the following information **in addition to, not instead of**, any material that is otherwise identified as *Brady* material:

1. The name and address of each cooperating witness.

2. The case number(s) and name(s) of the prosecution(s) in which the cooperating witness(es) used in this case has/have been previously used as (a) cooperating witness(es).

3. The case name(s) and number(s) of any trial(s) or evidentiary hearing(s) at which the cooperating witness(es) used in this case has/have testified concerning his/her own prior criminal activity, payments or rewards provided to him/her by the government, efforts made to induce others to participate in criminal activity, or other purported law enforcement -related matters.

4. Any ledger, sheet, or other document which details the sums paid to the cooperating witness(es) or his/her family in this and other cases in which the informant(s) assisted the government, and the purpose of each such payment.

5. Any records or information, whether or not memorialized in a written document, regarding promises of immunity**,** leniency**,** preferential treatment, or other inducements made to the cooperating witness(es) or any family member(s), friend(s), or associate(s) of the informant(s) in exchange for the cooperation of the informant(s), including the dismissal or reduction of charges, assistance in matters of sentencing or deportation, and/ or promises or expectancies regarding payments for expenses or testimony or eligibility for any award or reward.

6. Any records or information, whether or not memorialized in a written document, regarding payments, promises of immunity, leniency, preferential treatment or other inducements offered or afforded any family member(s), friend(s), or associate(s) of any prospective witness(es) in exchange for that witness' cooperation.

7. Any information or records concerning any actual or implied threats of investigation or prosecution (including deportation, exclusion, or other proceedings by the INS) made by the government to any prospective government witness(es) or family member(s) or associate(s) of the witness(es), including information as to the underlying conduct which precipitated such investigations.

8. Any statement(s) made, information, or document by a prospective government witness that conflicts in whole or in part with: (a) the statement(s) of another prospective witness; (b) a prior statement or statements made by the same government witness with regard to the subject matter of the expected trial testimony of that witness; and/ or (c) any other document or witness.

9. The name and current whereabouts of any witness(es) to the underlying events of this case whom the government does not anticipate calling as a witness at trial and a copy of any statement(s) made by, or summary(ies) of an interview(s) with, that witness.

10. Any report, document, or information which details the criminal activities of the cooperating witness(es) which were undertaken by him/her without the authority or approval of the government, but for which the government has elected, formally or informally, not to prosecute.

11. FBI rap sheet, NCIC print-out, NADDIS, EPIC, NLETS, ATS, TECS, IDENT, and any other records available to the government reflecting the arrest, conviction, and investigative history of the cooperating witness(es).

12. Information concerning prior misconduct by the cooperating witness(es) in the performance of his/her role as an informant, including, but not limited to: any prior refusal to testify for or to assist the government; any prior allegation that the informant(s) entrapped another person to commit an offense or made false statements in connection with a criminal investigation; and any prior "blackballing" of the informant(s) by any law enforcement agency.

13. Information concerning misconduct by the cooperating witness(es) other than in his/her role as a cooperating witness, including misconduct that reflects a lack of candor, truthfulness, or law-abiding character, such as uncharged criminal conduct or fraud.

14. All information, records, and transcripts which in any way indicate or reveal that any prospective government witness, in connection with this case or any other case,

7

has provided untruthful, false, misleading, incomplete or inaccurate information or testimony to: (a) any state or federal law enforcement officer or agency; (b) any state or federal grand jury; and (c) any state or federal trial court while testifying at trial and/ or any related or preliminary proceeding.

15. Information reflecting the nature and extent of assets obtained by the informant(s) in connection with his/her illegal activities over the past ten years.

16. Any "records," documents, or information maintained by law enforcement agencies relating to the cooperating witness(es) used in this case, including information with respect to the following categories:

    a.  The witness was given a code name.
    b.  The witness was given an assumed or false identity.
    c.  Reasons for the witness' cooperation.
    d.  The witness was briefed on entrapment.
    e.  The witness was given a polygraph exam.
    f.  Contracts executed by the witness with any law enforcement agency.
    g.  Any release forms executed by the witness.
    h.  The witness was advised to pay federal income tax.
    1.  Records that the witness was advised that s/he could not violate the law.
    j.  Records with require the witness to protect his/her false identity or code name.
    k.  Records that the witness was advised that s/he could not use any illegal drugs.
    l.  Records that the witness consented to recording any conversations with any party.
    m.  Contingency fee agreement.

17. If the potential witness(es) was/were given a polygraph exam, the results of the exam, as well as any information concerning the failure of any potential witness to submit to a polygraph exam.

18. Any government agency files or other information revealing matters relevant to the cooperating witness(es)' credibility, mental or physical health, narcotic or alcohol use, or any other dependency.

19. All information and records revealing any potential impairment of the capacity of any prospective government witness to observe, recollect, and/ or testify about the events giving rise to the charges filed in this case, including, but not limited to, impairments of sight, hearing, memory, language, or any other physical or psychological disability.

20. All information and records indicating that any prospective government witness (a) may have suffered from any mental or emotional disease, disorder, illness, or defect at any time during the time span alleged in the indictment filed in this case, or (b) sought or received treatment for any such mental or emotional disease, disorder, illness, or defect at any time within the past five years.

21. All information and records indicating that the prospective government witness (a) may have used cocaine, marijuana, or another controlled substance, or used alcohol to excess at any time during the time span alleged in the indictment filed in this case, or (b) sought or received treatment for any substance abuse problem (including alcohol) at any time within the past five years.

22. Applicable records of the United States Probation Department if the witness(es) has/have been placed on probation or a Pre-Sentence Report or Investigation has been produced or conducted with respect to each witness.

Further, it is reasonable to expect that these materials will require pretrial investigation. It defeats the purpose of disclosure if the defense does not receive the constitutional right, to disclosure of *Brady* material in accordance with any particular timetable, a defendant is entitled to disclosure in time to make effective use of the material. *See, e.g., United States v. Higgs,* 713 F.2d 39, 44 at n.6 (3d Cir. 1983). Early disclosure will avoid mid-trial adjournments of testimony while an investigation is conducted. Moreover, defense counsel is entitled to open to the jury on those specific facts which should cause a jury to distrust the testimony of anticipated government

witnesses. Accordingly, the government should disclose all *Brady* material as soon as possible to Mr. Polanco.

II.        **Mr. Polanco Requests a Hearing to Determine the Sufficiency of the Affidavits Submitted in Support of the Search Warrant and Whether Probable Cause Existed to Support the Search Warrant.**

Upon information and belief, a search warrant was executed at the printing shop owned by Bienvenido Polanco.

As an initial matter, defendant requests that the government turn over search warrant affidavits for inspection.    Defendant cannot possibly prepare adequately for a hearing on the admissibility of such evidence without having had the opportunity to examine such evidence, and myriad taped conversations will certainly require a great deal of preparation time.  Defendant also requests that all warrants and resulting orders be turned over, entirely un-redacted, for examination.

III.       **A Bill of Particulars is Necessary to Apprise Mr. Polanco of the Facts and Circumstances of This Overreaching Conspiracy so That He Can Adequately Prepare His Defense and Avoid Prejudicial Surprise at Trial.**

The indictment alleges that Mr. Polanco a/k/a "Benny," unlawfully, knowingly, and willfully did receive, possess, conceal, store, barter, sell and dispose of falsely made, forged, altered, and counterfeited tax stamps, moving as, and which were part of, and which constituted interstate and foreign commerce, knowing the same to have been so falsely made, forged, altered, and counterfeited, to wit, Polanco sold counterfeit New Jersey cigarette tax stamps while in the Bronx, New York in violation of Title 18, United States Code, Sections 2315 and 2.  Aside from the general allegation that he sold counterfeit cigarette stamps, the indictment is silent as to the dates, times, and places that

the alleged activities occurred, and omits any reference to any other actors and events that were part of the alleged conspiracy. As such, a bill of particulars is in order.

The trial court possesses the discretion to direct the filing of a bill of particulars. *See* FED.R.CRIM.P. 7(f); *see also United States v. Bortnovsky,* 820 F.2d 572, 575 (2d Cir. 1987). A bill of particulars is appropriate where an indictment's failure to provide factual or legal information significantly impairs the defendant's ability to prepare his defense or is likely to lead to prejudicial surprise at trial. *See, e.g., United States v. Rosa,* 891 F.2d 1063, 1066 (3d Cir. 1989);*United States v. Addonizio,* 451 F.2d 49, 62-63 (3d Cir. 1971), *cert. denied,* 405 U.S. 936 (1972). Essentially, a bill of particulars should provide a defendant with that "minimum amount of information necessary to permit the defendant to conduct his own investigation." *United States v. Smith,* 776 F.2d 1104, 1111 (3d Cir. 1985). When viewed against this framework, it becomes evident that the indictment issued against Mr. Polanco fails to comport with even these minimum standards.

In light of the glaring absence of any detail whatsoever in the indictment, an order for a bill of particulars is a proper exercise of this court's discretion.

### IV. Mr. Polanco Seeks Any FED.R.CRIM.P. 404(b) Evidence the Government Anticipates Using at Trial.

The government may attempt to introduce other crime evidence in its case in chief pursuant to FED.R.EVID. 404(b). FED.R.EVID. 404(b) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident....

Federal Rule of Evidence 404(b) generally prohibits the admission into evidence of extrinsic acts intended to prove a defendant's propensity for crime or to

suggest to the jury unfavorable inferences reflecting on his character." *United States v. Scarfo,* 850 F .2d 1015, 1018 (3d Cir.), *cert. denied,* 488 U.S. 910 (1988). However, if offered for a proper purpose, evidence of other crimes or wrongs is admissible, "subject only to the ordinary limitations under Rules 402 and 403." *Id.* at 1019. Therefore, other crime evidence will be admissible if (I) the evidence is offered for a proper purpose under FED.R.EVID. 404(b); (2) there is sufficient evidence to support a finding by the jury that the defendant committed the similar act; (3) the prior act evidence is relevant to the case in which it is admitted; and (4) the probative value of the prior act evidence is not substantially outweighed by the danger of unfair prejudice. *See Huddleston v. United States,* 485 U.S. 681, 691-92 (1988). The government bears the burden of establishing the admissibility of evidence it intends to introduce pursuant to FED.R.EVID. 404(b). *See generally id.*

In order to prepare for trial, Mr. Polanco requests that the government specify what Rule 404(b) evidence it anticipates introducing at trial and that the court then conduct a hearing and rule on the admissibility of that evidence.

### V.   Mr. Polanco Requests a Hearing on the Admissibility of the Evidence Seized During the Execution of the Search Warrant on the Date of his Arrest

Defendant contends that there was no probable cause for issuance of the search warrant, nor was there any probable cause for Defendant's arrest.  Therefore, the seizure of any items at the printing store was illegal.

While it is anticipated that the government will respond that there was probable cause, it is also anticipated that the government will allege that the arrest and search of the defendant was lawful.

VI.    **The Government Must Produce All Expert Tests and Reports, as Well as Summaries of Expert Testimony.**

Federal Rule of Criminal Procedure 16(a)(1)(E) allows discovery of all scientific and expert reports or test results, as well as a summary of the testimony which the government intends to introduce through any expert witness. The summary must contain the reasons or the basis for the expert opinion, along with the expert's qualifications. Further, the government must give the defense adequate notice of the use of any expert witnesses in order that the defense can have "adequate time to obtain an expert to assist him in attacking the findings of the government's ...expert." *United States v. Barrett,* 703 F .2d 1076, 1081 (9th Cir. 1983).

The defense should be provided with any reports so that Mr. Polanco can take steps to investigate those reports in order to present his defense. In light of the investigation involved in evaluating expert and scientific evidence, Mr. Polanco requests that all such evidence be immediately made available so that possible defense investigation can ensue at once.

VII.    **Mr. Polanco Seeks the Identities and Whereabouts of All Informants Employed by the Government in Connection With This Matter, Information Concerning Those Informants, and an Opportunity to Interview the Informants.**

The nature of the charges and the evidence so far known to the defense (tape recorded conversations of confidential informant and Mr. Polanco) indicates that during the government's investigation confidential informants were employed by the government to provide information against Mr. Polanco.  Mr. Polanco requests that the

government be ordered to disclose the identity of any and all informants utilized. In addition, Mr. Polanco seeks any information or files containing information on these informants. Mr. Polanco also requests that he be granted the opportunity to interview these witnesses to the underlying events, who, as possible transactional witnesses, possess information that could be vital to his defense strategy, including whether to plead guilty.

While the government may "withhold from disclosure the identity of persons who furnish information for violations of law to officers charged with enforcement of that law[,]" this privilege is far from absolute, and exceptions may be made. *See Roviaro v. United States,* 353 U.S. 53,59-60 (1957). In determining whether disclosure is appropriate, the court should focus on "possible defenses (and) the possible significance of the informer's testimony". *Id.,* 353 U.S. at 62. In general, disclosure is warranted where it is "essential or relevant and helpful to the defense[,] ...lessens the risk of false testimony, is necessary to secure useful testimony, or is essential to a fair determination of the case." *McLawhorne v. State of North Carolina,* 484 F.2d 1,4-5 (4th Cir. 1973) (citations omitted). In contrast, public policy favoring protection of the identity of an informant forbids only non-essential disclosure. *See United States v. Ayala,* 643 F.2d 244,247 (5th Cir. 1981). The determination whether to disclose an informant's identity *must* be applied on a case-by-case basis, taking into consideration the possible defenses to the crime charged and the possible significance of the informant's testimony. *See Roviaro,* 353 U.S. at 62. Finally, disclosure is <u>required</u> "where the informant is an actual participant [in the criminal transactions.]" *McLawhorne,* 484 F.2d at 5 (emphasis added) (citations omitted).

The circumstances surrounding this prosecution dictates that the informants' identities must be disclosed, and that the disclosure must occur promptly so that Mr. Polanco can utilize the information to prepare his defense. Any evidence supplied by informers in the present case will presumably be a substantial part of the government's overall prosecution of Mr. Polanco. As such, the informants will play a significant role in this prosecution, and Mr. Polanco reasonably needs to ascertain who they are and their roles in the underlying events. He also needs to learn other relevant information, such as their motivation for cooperating and the decisions as to who was to record conversations, actively participate, etc.

In addition to the identity of the informants, Mr. Polanco reasonably seeks any information that the government possesses with respect to the informants, and an opportunity to interview the informants, again, both in advance of trial. When a defendant's liberty is at stake, interviews with such potential witnesses "are especially crucial." *United States v. Opager,* 589 F.2d 799, 804 (5th Cir. 1979). Further,

> [i]n determining whether the concept of fundamental fairness, implicit within due process, requires that the government disclose the identity and whereabouts of an informant and render reasonable assistance in locating an informant, a reviewing court must weigh the facts of each unique case and balance them against a defendant's need for access to the witness and the government's interest when withholding the identity or whereabouts of the informant. ... *A defendant can tip the balance in his favor if he establishes that an informant played an active or prominent role in the criminal activity.*

*United States v. McDonald,* 935 F.2d 1212, 1217 (llth Cir. 1993) (citations omitted) (emphasis added); *accord Ayala,* 643 F.2d at 246 (level of informant's involvement in criminal activity is important consideration in determining whether to permit non-disclosure); *McLawhorne,* 484 F.2d at 6 (participation by informant is "essential

distinction" requiring disclosure). Thus, where "the informant played an active and crucial role in the [underlying criminal transactions,] disclosure and production of the informant will in all likelihood be required to ensure a fair trial." *United States v. Jiles,* 658 F.2d 194, 197-98 (3d Cir. 1981), *cert. denied,* 455 U.S. 923 (1982); *accord McLawhorne,* 484 F.2d at 5 ("where the informant is an actual participant, and thus a witness to material and relevant events, fundamental fairness dictates that the accused have access to him as a potential witness.").

The circumstances of this case and the facts surrounding Mr. Polanco's participation in and knowledge about the alleged conspiracy to sell counterfeited tax stamps are highly relevant and of vital importance to the defense. Any informants involved in the alleged conspiracy have detailed knowledge about the alleged conspiracy, rendering them crucial witnesses. While it is not known whether any informants were in fact active members of the alleged criminal conspiracy, played a prominent part in it, thus rendering them "transactional witnesses," such a situation is highly likely, since the government appears to believe that this is a fairly widespread conspiracy. In this circumstance, they would possess information with respect to the transactions which formed the alleged conspiracy. Indeed, such informants are likely to possess knowledge which is highly pertinent to the defense, including the alleged amount of drugs involved, the alleged shipment dates and routes, the alleged exchanges of money, the manner in which the counterfeit stamps were made and distributed, the individuals allegedly involved, and their respective roles. The information they possess thus addresses every aspect of the overall charges as alleged and Mr. Polanco's alleged role, and is accordingly

vital to Mr. Polanco's defense strategy, including any decision whether to enter a guilty plea.

Moreover, if Mr. Polanco is able to speak with the informants in advance of trial, he will be able to evaluate the witnesses' testimony and thus adequately prepare his defense strategy. He will also be better prepared to challenge those witnesses' statements and may be able to rebut their testimony, *see Opager,* 589 F.2d at 804, discover evidence beneficial to his defense, and determine whether to enter a guilty plea. Further, even if Mr. Polanco knows any of the confidential informants used in this case, the opportunity to interview them is nonetheless important in order for counsel to gather specific information regarding the witnesses' testimony, their current activities, and additional evidence in support of the defense. *See Opager,* 589 F .2d at 805. The right to interview the informants is no less applicable when the informants are in protective custody. *cf. United States v. Murray,* 491 F.2d 178, 194-95 (91h Cir.), *cert. denied,* 419 U.S. 854, 419 U.S. 942 (1973).

The desirability of calling any informant as a witness for the defense, or at least interviewing him/her in preparation for trial, is a matter for Mr. Polanco rather than the government to decide. *See Roviaro,* 353 U.S. at 64. Indeed, other courts have upheld the defendant's right to have an opportunity to interview prospective witnesses equal to that of the government. *See Opager,* 589 F .2d at 805; *United States v. Brown,* 555 F .2d 407, 425 (5th Cir. 1977), *cert. denied,* 435 U.S. 904 (1978) (citation omitted). This result is in accord with the precept that "[a] criminal trial ...is a quest *for* the truth. That quest will more often be successful if both sides have an equal opportunity to interview the persons who have the information from which the truth may be determined." *Gregory v.*

*United States,* 369 F.2d 185, 188 (D.C. *Cir.* 1966), *cert. denied,* 396 U.S. 865 (1969). Consequently, Mr. Polanco respectfully requests that the government be required to disclose the identities of any and all confidential informants in advance of trial, that the government release any information it has with respect to the informants, and that Mr. Polanco be permitted to interview them as witnesses to underlying events.

**VIII.    Mr. Polanco Requests That the Government be Required to Disclose Information Concerning the Circumstances Leading up to and Surrounding the Seizures Made in This Case (see point V above).**

Federal Rule of Criminal Procedure 12(d)(2) permits a defendant to request from the government notice of its intention to present at trial evidence that the defendant may be entitled to discover under Rule 16, in order that the defendant may evaluate the propriety of a suppression motion with respect to that evidence. Pursuant to this rule, Mr. Polanco seeks information concerning the searches and seizures that occurred in this case.

In order to defend the charges against him, which will presumably be proven by the introduction of the evidence seized or by testimony concerning the circumstances leading up to and surrounding the seizures, Mr. Polanco reasonably needs to be aware of those circumstances. This request includes any documentation of the circumstances leading up to and surrounding the execution of the search warrant and seizures, including but not limited to, warrant applications and supporting affidavits and statements of witnesses who participated in or were present at the searches.  Only with that information can he make intelligent and informed decisions to prepare his defense.

**IX.    Mr. Polanco Seeks a Hearing to Determine the Admissibility and Use of His Prior Convictions Under FED.R.EVID. 609.**

Pursuant to Fed.R.Evid. 104(c), Mr. Polanco requests a hearing on the admissibility of his prior convictions for impeachment purposes under FED.R.EVID. 609(a)(1) and (2). This request for a decision pretrial is prompted by a desire to plan an appropriate trial strategy, to determine whether Mr. Polanco will testify in his own defense, and to afford Mr. Polanco an opportunity to address impeachment evidence in his opening statement to the jury.

### X.     The Government Should Produce All *Jencks Act* Material and the Agents' Rough Notes in a Timely Fashion in Advance of Trial so as to Permit an Orderly and Efficient Trial.

In addition, Mr. Polanco also seeks those statements by those witnesses which may constitute *Jencks Act* material. The government is required to retain witnesses' notes and reports. *See Virgin Islands v. Testamark,* 570 F.2d 1162, 1165-1166 (3d Cir. 1978).  While the government is not compelled to produce a witness' rough notes and reports until after the witness testifies, *see* 18 U.S.C. §3500, the trial court can exercise its inherent power to control discovery by ordering the government to disclose before trial *all Jencks Act* material. Early disclosure of *Jencks Act* material will expedite trial by preventing unnecessary delays and interruptions during the course of trial. If the government discloses these materials before trial, the defense can cross-examine government witnesses immediately after they have testified on direct.

In the interests of judicial economy and efficiency, as well as basic fairness, Mr. Polanco requests early disclosure of all *Jencks Act* materials, including the agents' rough notes of any such statements, including those of Mr. Polanco or any other alleged conspirator, indicted or un-indicted.

### XI.    Mr. Polanco Requests Leave to File Additional Motions as the Need Arises Before Trial.

Due to the nature of the instant case and the legal issues that may arise as the result of defense investigation and continuing discovery, Mr. Polanco anticipates that it may become necessary to file additional motions, and requests that, in the interest of fundamental fairness, he be permitted to do so until the date set for trial. He will of course notify the government of his intention to file any motions as soon as they arise.

### XII.    Conclusion.

For the reasons set forth above, Defendant Bienvenido Polanco respectfully requests that this motion be granted and that he be granted the following relief:

1.    An order requiring the government to disclose all material falling within the scope of *Brady v. Maryland,* 373 U .5. 83 (1963) and its progeny, as outlined in the Pretrial Motion of the Defendant.
2.    A hearing to determine the admissibility of recorded conversations.
3.    An order directing the government to produce a bill of particulars.
4.    An order directing the government to produce all FED.R.CRIM.P. 404(b) evidence it anticipates using at trial.
5.    A hearing to determine the admissibility of the evidence seized at the time of Mr. Polanco's arrest.
6.    A hearing to determine probable cause to issue the search warrant.
7    An order directing the government to produce any expert tests and reports as well as summaries of the anticipated testimony of the witness(es) through whom they will be introduced.
8    An order directing the government to reveal the names and whereabouts of all informants and release the additional information about the informants requested by the Defendant.
9    An order directing the government to disclose information concerning the circumstances leading up to and surrounding the seizures of all evidence in this case.

10. A hearing to determine the admissibility and use of Mr. Polanco's prior convictions, if any.

11. An order directing the government to produce all *Jencks Act* material and the rough notes of the agents.

12. An order providing that Mr. Polanco is granted leave to file additional motions as they become necessary before trial, upon notice to the government.

Dated: New York, New York
　　　　May 16, 2008

_____/s/_____
ISMAEL GONZALEZ, ESQ. (IG-9920)
Attorney for Defendant
Bienvenido Polanco
**ISMAEL GONZALEZ & ASSOCIATES**
152 West 36th Street, Suite 202
New York, NY 10018
212-465-1500