UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA,            :

        - v. -            :            08 Cr. 119 (HB)

BIENVENIDO POLANCO,            :
  a/k/a "Benny,"
                   :

           Defendant.

                   :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - x


# MEMORANDUM OF LAW OF THE UNITED STATES OF AMERICA
## IN OPPOSITION TO DEFENDANT'S PRETRIAL MOTIONS


MICHAEL J. GARCIA
United States Attorney for the
Southern District of New York
One St. Andrew's Plaza
New York, New York 10007

Adam S. Hickey
Assistant United States Attorney
    -Of Counsel-

## TABLE OF CONTENTS

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    A.    Offense Conduct . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    B.    Post-Indictment Discovery . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

ARGUMENT

    I.    POLANCO'S REQUEST FOR EARLY DISCOVERY, INCLUDING
BRADY, GIGLIO, JENCKS ACT, AND 404(B) MATERIAL, SHOULD
BE DENIED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

        A.    Brady Material . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

        B.    Giglio and Jencks Act Material . . . . . . . . . . . . . . . . . . . . . . . . . . 7

        C.    Rule 404(b) Material . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

    II.    POLANCO'S MOTION FOR A SUPPRESSION HEARING
SHOULD BE DENIED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

    III.    POLANCO'S REQUEST FOR A BILL OF PARTICULARS
SHOULD BE DENIED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

    IV.    POLOCANO'S MOTION FOR EXPERT DISCLOSURE
SHOULD BE DENIED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

    V.    POLANCO'S REQUEST FOR AN ORDER REQUIRING DISCLOSURE
OF THE IDENTITY AND OTHER INFORMATION PERTAINING TO
ANY INFORMANTS SHOULD BE DENIED . . . . . . . . . . . . . . . . . . . . 17

    VI.    POLANCO'S MOTION FOR A HEARING TO DETERMINE THE
ADMISSIBILITY OF ANY PRIOR CONVICTIONS SHOULD
BE DENIED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

    VII.    POLANCO'S MOTION FOR AN ORDER PERMITTING HIM TO FILE
FURTHER MOTIONS WITHOUT TIME CONSTRAINT
SHOULD BE DENIED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

## PRELIMINARY STATEMENT

The United States of America respectfully submits this memorandum of law in opposition to the pretrial motions of defendant Bienvenido Polanco ("Def.'s Mots.").

Defendant Bienvenido Polanco asks this Court for: (1) an order directing the Government to produce extraordinary additional and/or early discovery, including, inter alia, Giglio, Brady, Jencks Act, and 404(b) material (Defense Requests 1, 4 and 10[1]); (2) a hearing to determine the admissibility of evidence seized pursuant to a search warrant executed in or about March 2007 and at the time of the defendant's arrest in or about January 2008 (Defense Requests 2, 5, and 8); (3) an order for a Bill of Particulars (Defense Request 3); (4) an order requiring disclosure of all scientific and expert reports or test results, as well as a summary of the testimony which the Government intends to introduce through any expert witness (Defense Request 6); (5) an order requiring disclosure of the identity of Government informants (Defense Request 7); (6) a hearing to determine the admissibility and use of the defendant's prior convictions (Defense Request 9); and (7) an order permitting him to file further motions at will (Defense Request 11).

Defendant Bienvenido Polanco's motions are without merit or premature and, for the reasons set forth below, should be denied.

---

[1] As the defendant has inconsistently numbered the requests in his motion (compare pages 1-3 with pages 20-21), this list tracks the heading numbers within the body of the defendant's motion.

## BACKGROUND

**A.    Offense Conduct**

This case stems from an undercover investigation of the defendant's manufacture and sale of counterfeit cigarette tax stamps.[2]  According to the Complaint filed in this case, on or about July 5, 2007 and September 14, 2007, the defendant sold an undercover officer (the "UC") approximately 113,017 purported New York cigarette tax stamps. (Compl. ¶ 4(a)).  Were those stamps legitimate, they would represent the payment of approximately $339,051 worth of New York state and city cigarette taxes. (Id.)  The defendant met with the UC again on or about September 28, 2007, to receive a sample New Jersey cigarette tax stamp, for the purposes of reproducing that state's tax stamp. (Compl. ¶ 4(b)).  On or about October 3, 2007, the defendant met the same UC and sold him 100,800 counterfeit New Jersey cigarette tax stamps representing the payment of approximately $260,064 worth of New Jersey taxes. (Compl. ¶ 4(c)).  Based on the October 3, 2007, transaction, Defendant Bienvenido Polanco was charged in a one-count Indictment with possessing and selling counterfeit cigarette tax stamps in violation of Title 18, United States Code, Sections 2315 and 2.

_____

[2] As described in the Complaint, cigarettes in the United States are subject to different levels of tax that vary from state to state.  Generally, a pack of cigarettes cannot be sold in a particular state unless that pack bears that state's unique tax stamp, certifying that any and all applicable state taxes have been paid.  See 18 U.S.C. §§ 2341(2), 2342(a).  A tax stamp for one state, e.g., New Jersey, reflects the payment of only that state's cigarette tax, and, when properly affixed to a pack of cigarettes, indicates that pack can be legally sold, but only in that state. (Compl. ¶ 2).

A common criminal scheme involves the diversion of cigarettes from jurisdictions with low cigarette tax rates to states with higher cigarette taxes, where they can then be sold at or below market rates (and the participants in the scheme can retain the proceeds, instead of forwarding the taxes due to the jurisdiction where the cigarettes are sold).  Counterfeit tax stamps are often applied to these packages of out-of-state cigarettes to give the appearance that they are legally sold in the higher-tax state. (Compl. ¶ 3).

The investigation revealed that Polanco not only sold counterfeit cigarette tax stamps, he printed them himself. On or about March 8, 2007, law enforcement agents executed a search warrant on the defendant's printing business, located at 648 Jackson Avenue, Bronx, New York. In the course of the search, agents recovered more than 250,000 counterfeit New York state cigarette tax stamps and more than 10,000 counterfeit New Jersey cigarette tax stamps, which together represented more than $780,000 worth of cigarette taxes from those jurisdictions.

**B.    Post-Indictment Discovery**

On or about February 25, 2008, the Government produced discovery to the defendant, including: the Complaint; the Indictment; the Marshals' intake form for the defendant; the defendant's criminal history record (or "rap sheet"); the application for a search warrant (including the underlying affidavit) and search warrant for the defendant's print shop located at 648 Jackson Avenue, Bronx, New York, along with an inventory of items seized during a search of that premises; a copy of samples of counterfeit New Jersey cigarette tax stamps seized from 648 Jackson Avenue during the aforementioned search; other documents seized from 648 Jackson Avenue during the search; inventories of other evidence seized in the course of the search of 648 Jackson Avenue (including printing chemicals, printing equipment, and computers used to produce counterfeit cigarette tax stamps at 648 Jackson Avenue); documents obtained from Popular Brokerage Corp. and Citibank relating to the defendant's printing business at 648 Jackson Avenue; surveillance and other photographs taken on or about September 28, 2007, and relating to the defendant's meeting with the UC that day; a video recording of the defendant's meeting with the UC on or about July 5, 2007; and recordings of the defendant's statements during phone conversations and meetings with a cooperating witness (the "CW") or the UC on or

about July 3, 2007, July 5, 2007, September 12, 2007, September 14, 2007, September 25-26, 2007, September 28, 2007, and October 1-3, 2007.  (D. 1-824).[3]

With respect to the recorded statements from July 3, 2007, July 5, 2007, September 12, 2007, September 25, 2007, and October 2, 2007, the Government summarized the defendant's conversations with Government agents in its discovery letter.  With respect to the recorded statements on September 14, 2007, September 28, 2007, and October 3, 2007, the Government provided draft transcripts of those conversations on or about March 3, 2008.  Also on that date, the Government produced an additional recording of a conversation between the defendant and a cooperating witness on August 25, 2007 (D. 825), and the Government summarized that conversation.

By its discovery letter dated February 25, 2008, the Government made available for inspection all of the physical evidence in its custody (including the equipment used to produce the stamps at the defendant's print shop and the counterfeit stamps seized from there or purchased from the defendant).  The Government's discovery letter also acknowledged the Government's obligations under Brady v. Maryland, 373 U.S. 83 (1963) but stated that the Government was unaware of any Brady material.

## ARGUMENT

## I.    POLANCO'S REQUEST FOR EARLY DISCOVERY, INCLUDING BRADY, GIGLIO, JENCKS ACT, AND 404(B) MATERIAL, SHOULD BE DENIED

Defendant Bienvenido Polanco has made a boilerplate motion setting forth a litany of extraordinary requests for additional discovery.  See .'s Mots. at 5-9, 11-12, 19.

_____

[3] "D. __" indicates the Bates-stamp of items produced to the defendant in discovery.

Essentially, he requests: (1) the immediate production of <u>Giglio</u> material (which he denominates as <u>Brady</u> material); (2) the immediate disclosure of evidence the Government may seek to admit pursuant to Rule 404(b) of the Federal Rules of Evidence, and (3) the immediate production of statements by Government witnesses.[4] Because these requests are either moot, premature, or not required by any statute or the Federal Rules of Criminal Procedure, the Government respectfully submits that the defendant's discovery requests be summarily denied.

Before addressing, the defendant's demands for <u>Brady</u>, <u>Giglio</u>, Jencks Act, and 404(b) material, the Government notes that is has, as described in the Background section of this Memorandum, already produced discovery to Polanco pursuant to Federal Rule of Criminal Procedure 16, and will continue to provide supplemental discovery as required by that Rule.

### A.    Brady <u>Material</u>

Polanco requests that the Government disclose exculpatory material pursuant to <u>Brady v. Maryland</u>, 373 U.S. at 87. <u>See</u> Def.'s Mots. at 4-10. Pursuant to the Due Process Clause of the United States Constitution, the Government has a duty to disclose favorable evidence to the accused where such evidence is "material" either to guilt or to punishment. <u>See Brady</u>, 373 U.S. at 87. Favorable evidence includes evidence that tends to exculpate the accused, <u>see id.</u>, as well as evidence that is useful to impeach the credibility of a government witness. <u>See Giglio v. United States</u>, 405 U.S. 150, 154 (1972). As the Court of Appeals has explained, <u>Brady</u> and <u>Giglio</u> material must be provided by the Government "in time for its effective use at trial." <u>In re</u>

---

[4] With respect to the timing of pre-trial disclosures, the Government would ordinarily attempt to work out a disclosure schedule that is satisfactory to both parties, mooting the need for the Court's attention. Because defense counsel has moved to withdraw, however, the Government has not attempted those negotiations.

- 5 -

United States (United States v. Coppa), 267 F.3d 132, 146 (2d Cir. 2001); see also id. ("the prosecutor must disclose . . . exculpatory and impeachment information no later than the point at which a reasonable probability will exist that the outcome would have been different if an earlier disclosure had been made").

The Government acknowledged its continuing obligation to provide disclosure under Brady v. Maryland in its February 25, 2008 letter to Polanco's then-counsel, Peggy Cross, Esq. Leaving aside, for the moment, any Giglio material (i.e., that which may relate to the credibility of the Government's witnesses at trial, which is often considered a subset of Brady material), the Government is unaware of any Brady material. The Government is mindful of its continuing obligation to disclose Brady material, however, and will produce any additional such material as soon as the Government learns of its existence.

Because the Government has made a good-faith representation to the Court and defense counsel that it recognizes and has complied with its disclosure obligations under Brady, Polanco's request should be denied. See, e.g., United States v. Gallo, No. 98 Cr. 338 (JGK), 1999 WL 9848, at *8 (S.D.N.Y. Jan. 11, 1999) (denying defendant's motion to compel production of Brady material based on Government's representations that "it is aware of its obligations under Brady . . . and will produce any Brady material to the defense well before trial"); United States v. Yu, No. 97 CR 102 (SJ), 1998 WL 57079, at *4-*5 (E.D.N.Y. Feb. 5, 1998) (denying defense request that Government provide early disclosure of Brady material because Government acknowledged its continuing obligation to provide exculpatory material upon its discovery and assured that it would comply with that obligation); United States v. Perez, 940 F. Supp. 540, 553 (S.D.N.Y. 1996) (same).

### B.    Giglio and Jencks Act Material

Although denominated as a request for Brady material, the majority of the defendant's first request is aimed at the advanced disclosure of material that may be used to impeach or cross-examine the Government's witnesses at trial, especially any cooperating witnesses (commonly known as Giglio material), including the name and address of any cooperating witness, their criminal history and any other misconduct, their prior testimony, information as to any promises, threats, or inducements made to potential witnesses, or their physical or mental disabilities, and the names of individuals with knowledge that the Government does not intended to call as witnesses, Def.'s Mots. at 5-9, as well as advanced disclosure of prior statements by the Government's witnesses, Def.'s Mots. at 19.

There is no basis for these requests.  As a threshold matter, all such requests are premature, for the Government has not yet identified which witnesses it intends to call at trial. That determination will depend upon a number of considerations, including the trial date, which has yet to be set.  (Further, as discussed below with respect to the defendant's request for information concerning the Government's informants, it is not clear that any testimony by cooperating witnesses will be required.)  And even if the Government had identified its witnesses, the request for their identification this far in advance of trial has no foundation in law. As the Second Circuit has explained, "Federal Rule Criminal Procedure 16 does not require the Government to furnish the names and addresses of its witnesses." United States v. Bejasa, 904 F.2d 137, 139 (2d Cir. 1990).  Nor does any other rule or statute obligate the Government to disclose the identity of its prospective witnesses. See United States v. Alessi, 638 F.2d 466, 481 (2d Cir. 1980) ("the prosecution [is] under no obligation to give [the defendant] advance warning

of the witnesses who would testify against him" (citing <u>Weatherford v. Bursey</u>, 429 U.S. 545, 559 (1977))). Moreover, <u>United States v. Cannone</u>, 528 F.2d 296 (2d Cir. 1975), makes clear that a defendant is entitled to disclosure of the Government's witnesses only if he makes "a specific showing that the disclosure [is] both material to the preparation of his defense and reasonable in light of the circumstances surrounding his case." <u>Id.</u> at 301. A mere "abstract conclusory claim that such disclosure [is] necessary to [the] proper preparation for trial" is insufficient. <u>Id.</u> at 301-02 (abuse of discretion for the district court to grant defense motion for a witness list supported by only general statement of need); <u>see also</u> <u>United States v. Biaggi</u>, 675 F. Supp. 790, 810-11 (S.D.N.Y. 1987); <u>United States v. Feola</u>, 651 F. Supp. at 1138. Here, Polanco has not demonstrated a particularized need for a witness list beyond simply asserting that such information is necessary to prepare for cross-examination. Consequently, his request should be denied.

       With respect to the prior statements of Government witnesses, the law is also clear that the Government is under no obligation under the Jencks Act, 18 U.S.C. § 3500 <u>et seq.</u>, to produce those statements until after each has testified on direct examination. The Jencks Act provides in pertinent part:

> In any criminal prosecution brought by the United States, no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) shall be the subject of subpoena, discovery, or inspection until said witness has testified on direct examination in the trial of the case.

18 U.S.C. § 3500.

Courts in this Circuit have consistently held that the district court lacks the power to mandate early production of Jencks material. See, e.g., United States ex rel. Lucas v. Regan, 503 F.2d 1, 3 n.1 (2d Cir. 1974); In re United States, 834 F.2d at 287; United States v. Ortiz-Montoya, No. 93 Cr. 0050 (RWS), 1995 WL 37841, at *1 (S.D.N.Y. Jan. 31, 1995); United States v. McGuinness, 764 F. Supp. 888, 896 (S.D.N.Y. 1991).

Similarly, courts in this Circuit have repeatedly refused to compel disclosure of impeachment or Giglio material (which encompasses virtually all of the defendant's requests) well in advance of trial. In United States v. Coppa, the Second Circuit held that the Government is not required to produce Giglio material until it produces "3500 material" pursuant to the Jencks Act, so long as the Government provides the Giglio material in time for its effective use at trial. 267 F.3d at 145-46; see also United States v. Nixon, 418 U.S. 683, 701 (1974) ("Generally, the need for evidence to impeach witnesses is insufficient to require its production in advance of trial."); United States v. Greyling, 00 Cr. 631 (RCC), 2002 WL 424655, at *2 (S.D.N.Y. Mar. 18, 2002) (production of Giglio material by the Wednesday before the week in which a witness will testify is appropriate); Gallo, 1999 WL 9848, at *7-*8 (denying defendants' motions to require the early production of Giglio and 3500 material based on Government's representations that it would provide the information sufficiently in advance of each witness's testimony to allow adequate time to prepare for cross-examination); United States v. Mejia, No. 98 Cr. 4, 1998 WL 456257, at *1 (S.D.N.Y. Aug. 5, 1998) (denying defendant's motion to compel all impeachment material under Giglio based on the Government's representations that it would make such information available at the time that it provides 3500 material).

- 9 -

However, in order to avoid any adjournment or delay in the trial which might conceivably occur if 3500 and Giglio material were not produced until after the Government's witnesses have testified, the Government will adhere to its customary practice of producing impeachment material at the same time as Jencks Act material, i.e. the business day before trial, or, if additional time is reasonably required to review such material, sufficiently in advance of the witness's testimony so as to avoid any delay at trial. This practice will allow defense counsel adequate time to prepare for cross-examination of Government witnesses as they come up at trial.

### C.    Rule 404(b) Material

Polanco also requests an order directing the Government to disclose at this time the evidence that it will seek to admit at trial pursuant to Federal Rule of Evidence 404(b). See Def.'s Mots. at 12. This request should be denied.

First, by this memorandum, the Government provides notice that it intends to offer evidence of the defendant's sales of counterfeit New York cigarette tax stamps on or about July 5, 2007 and September 14, 2007, communications between the defendant and law enforcement agents between March 2007 and October 2007 (the vast majority of which were recorded) relating to those sales, and the fruits of the search of the defendant's print shop on or about March 8, 2007. The Indictment in this case is narrowly drawn to encompass a single undercover transaction on October 3, 2007, but the evidence of the defendant's prior interactions with law enforcement, in which he sold counterfeit tax stamps to the very same UC he met on October 3, 2007, is highly relevant and admissible evidence, for it provides the background of the investigation of the defendant, and includes statements by the defendant that

- 10 -

are highly inculpatory.  It is not, in the Government's view, evidence of prior misconduct by the defendant subject to Rule 404(b), but rather direct evidence of his guilt of the pending charge. To the extent the defendant would claim that evidence is subject to Rule 404(b), however, the Government hereby provides notice of its intent to seek its admission against him.

Second, beyond this, the Government is cognizant of its obligation to provide "reasonable notice in advance of trial" of the evidence it seeks to admit pursuant to Rule 404(b), and it will do so.  Fed. R. Evid. 404(b).  Rule 404(b) sets no time limit for the Government to disclose evidence it intends to offer pursuant to the rule.  Such a limitation would be unworkable, because the Government cannot predict whether it will offer such evidence until the proof and the anticipated defenses begin to crystallize as the trial date nears.  See United States v. Matos-Peralta, 691 F. Supp. 780, 791 (S.D.N.Y. 1988).  Indeed, the Second Circuit has approved disclosure of Rule 404(b) evidence as late as several days before, and even during trial, depending on the circumstances of the particular case.  See United States v. Valenti, 60 F.3d 941, 945 (2d Cir. 1995) (notice four days prior to trial sufficient where Government provided documents to defense on same day they were obtained); United States v. Matthews, 20 F.3d 538, 16 551 (2d Cir. 1994) (notice during trial sufficient when balanced against need to avoid indirect disclosure of identity of Government witness).

In the instant case, the Government intends to provide notice of any additional Rule 404(b) evidence it intends to offer no later than two weeks before the beginning of trial. The Government respectfully submits that such notice is more than adequate under the governing law in this Circuit, and that the defendant's motion should therefore be denied.

## II.     POLANCO'S MOTION FOR A SUPPRESSION HEARING SHOULD BE DENIED

In his second, fifth, and eighth requests, Polanco requests documentation describing the circumstances of any searches in this case as well as a hearing to determine the admissibility of evidence seized pursuant to a search warrant executed on his print shop in or about March 2007 and evidence seized when the defendant was arrested. Def.'s Mots. at 10, 12, 18. The defendant's request for information concerning the search of his business was satisfied by the discovery the Government previously provided, however, and to the extent the defendant seeks a hearing or other relief, he has failed to show the basis for such a hearing or other relief.

To begin with, Polanco's request for the search warrant affidavit and other documentation concerning the circumstances of the search of his business on or about March 8, 2007 (Def.'s Mots. at 10, 18) was mooted by the Government's production on February 25, 2008 of the search warrant application and affidavit, the warrant itself (listing the items that could be seized), and various inventories listing what was seized pursuant to the warrant. (D. 13-31). Since no evidence was seized at the time of the defendant's arrest (aside from items establishing the defendant's identity, such as his green card), there is no documentation to turn over with respect to that seizure.

The defendant's conclusory allegation that "there was no probable cause for issuance of the search warrant, nor was there any probable cause for [d]efendant's arrest," Def.'s Mot. at 12, is insufficient to warrant a hearing in light of the facially valid search warrant and arrest warrant issued in this case. First, the defendant has failed to articulate even the barest theory for why the search warrant affidavit — which outlined first-hand knowledge by a

- 12 -

cooperating witness of the defendant's illegal stamp-making at 648 Jackson Avenue — was insufficient to support the issuance of a search warrant for that business. Second, even if the affidavit was insufficient to establish probable case, the facial validity of the search warrant, issued by the Honorable Kevin Nathaniel Fox, United States Magistrate Judge, gave law enforcement officers a good faith basis to search the premises and seize the items described in the warrant. That evidence would lawfully be admitted against the defendant, even if there were defects in the application for a search warrant (which, the Government contends, there were not). See United States v. Leon, 468 U.S. 897, 913 (1984) ("[R]eliable physical evidence seized by officers reasonably relying on a warrant issued by a detached and neutral magistrate . . . should be admissible in the prosecution's case in chief."); United States v. Irving, 452 F.3d 110, 125 (2d Cir. 2006) ("[E]ven absent probable cause, the executing officers were entitled in good faith to rely on the warrant."); United States v. Singh, 390 F.3d 168, 183 (2d Cir. 2004). Because the defendant's business was searched pursuant to a facially valid warrant, and because the defendant has not articulated why the warrant was not valid, or why, even if it was not valid, law enforcement officers would not be entitled to rely on it, there is no reason to hold an evidentiary hearing, and the fruits of the search of the defendant's business should be admitted to the extent permitted by the Federal Rules of Evidence.

## III.   POLANCO'S REQUEST FOR A BILL OF PARTICULARS SHOULD BE DENIED

Polanco argues that a bill of particulars is required because "the indictment is silent as to the dates, times, and places that the alleged activities occurred, and omits any references to any other actors and events that were part of the alleged conspiracy." See Def.'s

Mots. at 10-11 (emphasis added).  The motion should be denied because it misunderstands the charges against the defendant (he is <u>not</u> charged with a conspiracy) and because the discovery provided to the defendant is more than sufficient for him to understand the nature of the allegations against him and to prepare for trial.

It is well established that the proper scope and function of a bill of particulars is to provide sufficient information about the nature of the charge to enable a defendant to prepare for trial, to avoid unfair surprise, and to preclude a second prosecution for the same offense. Fed. R. Crim. P. 7(f); <u>United States v. Torres</u>, 901 F.2d 205, 234 (2d Cir. 1990); <u>United States v. Bortnovsky</u>, 820 F.2d 572, 574 (2d Cir. 1987).  "A bill of particulars should be required only where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused."  <u>Torres</u>, 901 F.2d at 234 (internal quotation marks omitted).

If the information the defendant seeks "is provided in the indictment or in some acceptable alternate form," such as discovery, no bill of particulars is required.  <u>Bortnovsky</u>, 820 F.2d at 572; <u>United States v. Morales</u>, 280 F. Supp. 2d 262, 274 (S.D.N.Y. 2003).  In other words, the defense cannot use a bill of particulars as a general investigative tool, <u>United States v. Salazar</u>, 485 F.2d 1272, 1277-78 (2d Cir. 1973), or as a device to compel disclosure of the Government's evidence prior to trial.  See <u>Triana-Mateus</u>, No. 98 Cr. 958 (SWK), 2002 WL 562649, at *5 (S.D.N.Y. Apr. 15, 2002) (citing <u>United States v. Gottlieb</u>, 493 F.2d 987, 994 (2d Cir. 1974)).  "The Government is not required to disclose the manner in which it will attempt to prove the charges, nor the means by which the crimes charged were committed."  <u>Id</u>.  Therefore, "'the Government is not required to provide information that would, in effect, give the

- 14 -

defendant a preview of the Government's case before trial.'" <u>Triana-Mateus</u>, 2002 WL 562649, at *5 (quoting <u>United States v. Conley</u>, No. 00 Cr. 0816 (DAB), 2002 WL 252766, at *4 (S.D.N.Y. Feb. 21, 2002)).

Under the relevant legal standard, the Government is not required to (a) "particularize all of its evidence," <u>United States v. Cephas</u>, 937 F.2d 816, 834 (2d Cir. 1991); (b) disclose the precise manner in which the crimes charged in the indictment were committed, <u>see</u> <u>Torres</u>, 901 F.3d at 233-34 (demands for "whens" and "wheres" and "by whoms" within charged conspiracy are improper attempts at general pre-trial discovery); or (c) provide the defendant with a preview of the Government's case or legal theory. <u>United States v. Muyet</u>, 945 F. Supp. 586, 588-589 (S.D.N.Y. 1996). The ultimate test is whether the information sought is necessary, not whether it is helpful. <u>See</u> <u>United States v. Trippe</u>, 171 F. Supp. 2d 230, 240 (S.D.N.Y. 2001); <u>Conley</u>, 2002 WL 252766, at *4.

In this case, there is no danger that Polanco will suffer from unfair surprise at trial. Contrary to the defendant's motion, the Indictment alleges the date ("October 3, 2007") and the place (the "Bronx, New York") where the defendant "sold counterfeit New Jersey cigarette tax stamps." The Complaint goes further, disclosing that the defendant sold the stamps to the same undercover law enforcement officer that he previously sold counterfeit cigarette tax stamps to on July 5, 2007, and September 14, 2007. The Complaint alleges a fourth meeting, on September 28, 2007, between the defendant and the UC, in which the defendant received a sample New Jersey cigarette tax stamp. The discovery provides the defendant with, among other things, recordings of three of those meetings (and video surveillance from the other one), and either transcriptions or summaries of the recordings. Neither the Complaint nor the

Indictment alleges a conspiracy, and the Government does not at this time anticipate that the defendant will be charged with conspiracy.

In light of the straightforward nature of this case, which involves a handful of meetings and conversations with Government agents, all of which have been disclosed to the defendant, the defendant has received ample information about the specific crime charged in the Indictment as well as the other evidence the Government may offer at trial against him. The defendant's motion does not even suggest what more specific information he requires (and Polanco has not sought any additional information from the Government). Accordingly, the defendant's motion for a bill of particulars should be denied.

## IV.    POLOCANO'S MOTION FOR EXPERT DISCLOSURE SHOULD BE DENIED

Polcano also seeks an order requiring the disclosure of all scientific and expert reports or test results, as well as a summary of the testimony which the Government intends to introduce through expert witnesses. (Def.'s Mot. at 13). The motion should be denied as premature. The Government appreciates its obligation to produce discovery of scientific and expert reports or test results, as well timely notice of anticipated expert testimony, pursuant to Federal Rule of Criminal Procedure 16. At this time, however, there are no test results to produce to the defense, and the Government does not anticipate there will be a need for expert or scientific testimony in this case.

Should this case go to trial, the Government may call a witness from Meyercord Revenue, Inc., the only authorized printer of cigarette tax stamps in the United States, to testify, based on experience and familiarity with the company's business and products, that the stamps sold by the defendant and seized from his print shop are counterfeit. That testimony would not

- 16 -

be expert testimony, however, because it would not be an <u>opinion</u> based on "scientific,

technical, or other specialized knowledge," Federal Rule of Evidence 702, but rather would be

<u>fact</u> testimony based on first-hand experience and personal knowledge at Meyercord.  And even

if the testimony of the Meyercord witness were characterized as opinion testimony, it would be

properly admitted as lay testimony because it would be "rationally based on the perception of

the witness" and "not based on scientific, technical, or other specialized knowledge within the

scope of Rule 702."  Fed. R. Evid. 701; <u>see also</u> <u>United States v. Garcia</u>, 291 F.3d 127, 140 (2d

Cir. 2002) (describing the bases for lay opinion testimony).  In either case, it would no more be

expert testimony than testimony by a custodian of records that proffered business records are, in

fact, authentic records of the company kept in the ordinary course of business, and therefore no

additional disclosure by the Government is appropriate at this time.

## V.     POLANCO'S REQUEST FOR AN ORDER REQUIRING DISCLOSURE OF THE IDENTITY AND OTHER INFORMATION PERTAINING TO ANY INFORMANTS SHOULD BE DENIED

Polanco has moved for an order compelling the Government to disclose "the

identity of any and all informants utilized" in the course of the investigation of the defendant as

well as "any information or files containing information on th[o]se informants."  Def.'s Mots. at

14.  That request for highly sensitive information — which may have only an attenuated

connection to the Government's proof at trial — has no basis in the law absent an unusual

showing of need, and Polanco has fallen far short of making any such showing.  His motion

should therefore be denied.

The "general and well-established rule is that the Government enjoys a 'privilege

to withhold from disclosure the identity of persons who furnish information of violations of law

to officers charged with enforcement of that law.'" United States v. Shamsideen, No. 03 Cr.

1313 (SCR), 2004 WL 1179305, at *11 (S.D.N.Y. March 31, 2004) (citing Roviaro v. United

States, 353 U.S. 53, 59 (1957), and United States v. Jackson, 345 F.3d 59, 69 (2d Cir. 2003)).

An exception to this general rule exists only where "the defendant shows that discovery of the

witness's identity is material to the defense." United States v. Robles, No. 04 CR. 1036 (GEL),

2005 WL 957338, at *1 (S.D.N.Y. Apr. 22, 2005) (citing United States v. Saa, 859 F.2d 1067,

1073 (2d Cir. 1988)); see also United States v. Russotti, 746 F.2d 945, 949 (2d Cir.1984) ("[A]n

informant's identity need not be disclosed unless 'essential to the defense.' " (quoting Scher v.

United States, 305 U.S. 251, 254 (1938) (emphasis added))).

      The defendant bears the burden of demonstrating that he is entitled to the

"extraordinary remedy" of disclosure. United States v. Muyet, 945 F. Supp. 586, 602 (S.D.N.Y.

1996). It is not enough for the defendant simply to show that the informant was a participant in

and witness to the crime charged. Saa, 859 F.2d at 1073 (citing United States v. Jiminez, 789

F.2d 167, 170 (2d Cir. 1986)); United States v. Brunson, No. 97 Cr. 398 (RSP), 1998 WL

146271, at *2 (N.D.N.Y. Mar. 26, 1998); United States v. Castro, No. 94 Cr. 809 (JFK), 1995

WL 6235, at *2 (S.D.N.Y. Jan. 6, 1995). Nor can a defendant meet his burden by speculating

on the Government's case against the defendant, or the informant's role therein. United States

v. Fields, 113 F.3d 313, 324 (2d Cir. 1997) ("Speculation that disclosure of the informant's

identity will be of assistance is not sufficient to meet the defendant's burden."). Rather, the

defendant must make an affirmative showing that "the disclosure of an informant's identity . . .

is relevant and helpful to the defense of an accused, or is essential to the fair determination of a

cause," Saa, 859 F.2d at 1067, and that, accordingly, the need for disclosure of an informant's

identity outweighs the Government's interest in anonymity, Shamsideen, 2004 WL 1179305, at

*11 (citing Fields, 113 F.3d at 324); United States v. Jimenez, 789 F.2d at 170 (disclosure not

warranted where defendant produced no evidence that informant's testimony "would have been

of even marginal value to the defendant's case").

        Here, Polanco fails entirely to make the required showing.  He merely speculates

that "[a]ny evidence supplied by informers in the present case will presumably be a substantial

part of the [G]overnment's overall prosecution of Mr. Polanco."  Def.'s Mots. at 15.  To the

contrary, where almost all of the defendant's interactions with law enforcement, including a

cooperating witness, were recorded, and where the Indictment charges only one discrete,

recorded transaction with an undercover officer, which law enforcement officers surveiled (and

where no cooperating witness participated), the cooperating witness offers nothing beyond what

the Government has already provided in discovery.  The overwhelming evidence of the

defendant's guilt is likely to be admitted in the form of the defendant's recorded statements and

eyewitness testimony by law enforcement officers.  The cooperating witness who introduced the

defendant to an undercover officer on one occasion, and who made recorded calls to the

defendant, functioned more as a tipster than a participant in the charged criminal conduct.  See

United States v. McDonald, 935 F.2d 1212, 1217 (11th Cir. 1991) (holding that where an

informant merely makes the "necessary introductions," disclosure of his identity is not required,

because his role is "minimal").

        The defendant relies principally on McLawhorn v. North Carolina, 484 F.2d 1

(4th Cir. 1973), for the proposition that an informant's identity is always required where the

informant participates in the charged criminal activity.  To the extent McLawhorn holds such, it

does not state the law of the Second Circuit, which could not be more clear: "[I]t is not sufficient to show that the informant was a participant in and witness to the crime charged." Saa, 859 F.2d at 1073; see also United States v. Flaharty, 295 F.3d 182, 202 (2d Cir.2002) (upholding district court's decision not to compel identification of confidential informant who accompanied undercover officer on two of four undercover buys).

Moreover, McLawhorn is distinguishable, for in that case, the informant personally negotiated the sole drug transaction that formed the basis of the charges against the defendant. 484 F.2d at 3; see also Roviaro, 353 U.S. at 630 (compelling disclosure where "the Government's informer was the sole participant, other than the accused, in the transaction charged"). Here, by contrast, although a cooperating witness made recorded and other calls to the defendant, and introduced the defendant to an undercover officer on or about July 5, 2007, the defendant is charged with selling counterfeit tax stamps on a different occasion, October 3, 2007, when the CW was not even present. Cf. Flaherty, 295 F.3d at 202 (upholding non-disclosure where the Government's evidence included contraband purchased outside the informant's presence). The July 5, 2007, transaction is relevant to the case, but it is the October 3, 2007 transaction charged in the Indictment, and as a result, the CW's role in the investigation and prosecution of the defendant is far different from that of the informant in McLawhorn, where the informant participated in the only meeting that gave rise to the defendant's criminal liability. The CW in this case is a more peripheral figure, not someone "whose testimony would be significant in determining guilt or innocence." United States v. Russotti, 746 F.2d 945, 950 (2d Cir. 1984). His safety and privacy, and the Government's legitimate interest in encouraging cooperation with law enforcement, should not be compromised in the absence of an explanation

- 20 -

from the defense for why the CW is believed to have information that is material to the defense and not available elsewhere. The boilerplate paragraph of defendant's motion that discusses a narcotics conspiracy, Def.'s Mots. at 16, is insufficient.

There is no reason why the defendant "needs to ascertain who [the cooperating witnesses] are and their roles in the underlying events," much less "their motivation for cooperating and the decision as to who was to record conversations," Def.'s Mot. 15, because those considerations that are entirely irrelevant to the defendant's guilt or innocence. In Saa, by contrast, the defendant made a specific showing that a particular informant's testimony would be material to the defense by pointing to particular events about which the informant might testify. 859 F.2d at 1073-74. Polanco has not made any such showing here. Accordingly, he has not met the substantial burden of rebutting the presumption of nondisclosure of any informant or cooperator's identity and other related information.

Because the decision of whether to compel disclosure of an informant's identity requires a complex balancing of various factors, "'taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors,'" Saa, 859 F.2d at 1073 (quoting Roviaro, 353 U.S. at 62), and because Polanco has not identified any factor that weighs in favor of disclosure in this case (having failed to identify any defense to which any informant's testimony might relate), Polanco's motion for disclosure should be denied.

## VI.    POLANCO'S MOTION FOR A HEARING TO DETERMINE THE ADMISSIBILITY OF ANY PRIOR CONVICTIONS SHOULD BE DENIED

Based on the rap sheet produced in discovery, the Government is not aware of any prior conviction of the defendant. (D. 9-12).  Accordingly, there is no basis at this time for a hearing to determine the admissibility of any prior convictions of the defendant, pursuant to Federal Rule of Evidence 609.  Should the Government learn that the defendant has previously been convicted of a crime, it will promptly provide notice of that conviction to the defense.

## VII.   POLANCO'S MOTION FOR AN ORDER PERMITTING HIM TO FILE FURTHER MOTIONS WITHOUT TIME CONSTRAINT SHOULD BE DENIED

Finally, Polanco has moved for leave to file additional motions "until the date set for trial." Def.'s Mots. at 20.  Although the Government appreciates there may be a need for motion practice in limine, the Government opposes the defendant's vague, open-ended request. The defendant was arrested on a complaint on or about January 15, 2008, and he was indicted on or about February 13, 2008.  Discovery was produced on or about February 25, 2008, and since then, the parties have appeared for three pre-trial conferences, on or about February 26, 2008, April 3, 2008, and April 22, 2008.  The deadline for the defense to identify pre-trial motions, which was initially March 20, 2008, was adjourned, first to April 18, 2008, then to May 19, 2008 (at which point the instant motions were filed).  Mr. Gonzalez was retained to represent the defendant in March 2008.  Accordingly, the defense has had ample opportunity to file pre-trial motions.  The Government respectfully submits that the open ended request to file any further motions that may present themselves, at whatever point, be denied as both vague and premature.  If the defendant wishes to bring a motion in the future, he should first justify why

that motion was not brought within the time allowed by the Court for motion practice, and the

Court should at that time consider whether to hear additional motions from the defense.

## CONCLUSION

For the foregoing reasons, the Government respectfully requests that the Court

deny defendant Polanco's pretrial motions.

Dated:  New York, New York
        June 10, 2008

<div style="margin-left: 50%;">

Respectfully submitted,

MICHAEL J. GARCIA
United States Attorney
Southern District of New York

By:    _____
       Adam S. Hickey
       Assistant United States Attorney
       (212) 637-1039

</div>

- 23 -

## AFFIRMATION OF SERVICE

ADAM S. HICKEY, pursuant to Title 28, United States Code, Section 1746, hereby declares under the penalty of perjury:

I am an Assistant United States Attorney in the Office of the United States Attorney for the Southern District of New York.  On June 10, 2008, I caused copies of the Government's Memorandum of Law in Opposition to Defendant's Pretrial Motions to be delivered by ECF and Federal Express to:

> Ismael Gonzaelz, Esq.
> 152 West 36th Street, Suite 202
> New York, NY 10018

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.


Dated: New York, New York
       June 10, 2008


                                          _____
                                          Adam S. Hickey

- 24 -